**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANDREW SUNDOWN by his attorney in fact
Jeffrey Farkas, M.D. under a power of attorney,

                             Plaintiff,            <u>REPORT AND RECOMMENDATION</u>

      -against-                       **23-CV-1905 (JMA) (ST)**

AETNA LIFE INSURANCE COMPANY,

                             Defendant.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Before the Court is a motion by Defendant to dismiss Plaintiff's amended complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), respectively. Andrew Sundown, through his attorney in fact Jeffrey Farkas, M.D., ("Plaintiff") brought this ERISA action pursuant to 29 U.S.C. § 1132(a)(1)(B) against Aetna Life Insurance Company ("Defendant") alleging a failure to make payments pursuant to the terms of an ERISA-governed health plan. The motion was referred to this Court for a Report and Recommendation by the Honorable Joan M. Azrack. For the reasons set forth below, the Court respectfully recommends that Defendant's motion be GRANTED.

## BACKGROUND

At this stage, this Court is required to assume Plaintiff's alleged facts are true. This statement of facts is drawn from Plaintiff's Amended Complaint. Because Defendant primarily challenges whether the named plaintiff, patient Andrew Sundown ("Sundown"), is the true plaintiff bringing this action, or whether the power of attorney is a "ruse" by Dr. Jeffrey Farkas ("Dr. Farkas") to circumvent the anti-assignment provision in Sundown's health plan, see Mem.

Law Supp. Mot. Def. Dismiss Pl.'s Am. Compl. ("Def.'s Mem.") 11, ECF No. 13-2, the Court will refer to Sundown and Dr. Farkas by name for clarity and ease of reference.

The Amended Complaint alleges that, on September 4, 2021, Sundown presented to the emergency department of NYU Langone Medical Center showing symptoms of a stroke. Am. Compl. ¶ 7, ECF No. 12. At the time, Sundown was a beneficiary of an ERISA-governed health plan administered by Defendant. *Id.* ¶¶ 9, 32-34. Under the terms of Sundown's plan, treatment by out-of-network providers would not be covered unless it was rendered emergently. *Id.* ¶¶ 10-11. Such emergency treatment would be covered at the lesser of provider's billed rate or the "Reasonable and Customary (R&C) charge for the involuntary service or supply."[1] *Id.* at 3; Am. Compl. Exs. ("Pl.'s Exs.") 9-10, ECF No. 12-1. The plan also contained an anti-assignment provision: "Health benefits and other rights related to the program may not be sold, transferred, pledged or assigned, and any attempt to do so will be void."[2] Def.'s Mot. Dismiss Ex. 1 ("Def.'s Ex. 1") 145, ECF No. 13-4.

While at NYU Langone, Sundown received emergency care, including a cerebral angiogram, "among other procedures,"[3] which were performed by an out-of-network provider, Dr. Ambooj Tiwari, a physician with the Jeffrey Farkas, M.D., LLC practice group. *Id.* ¶¶ 7-8, 10.

---

[1] The Amended Complaint alleges a reasonable and customary rate that is lower than the billed rate and argues that the "Reasonable and Customary" provision applies. *See generally* Am. Compl. ¶¶ 14-26.

[2] Although this page of the plan was not attached to the Amended Complaint, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted); *see also Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). Moreover, "a pleading is deemed to include any 'written instrument' that is attached to it as 'an exhibit,'" "is incorporated in it by reference," or "is one 'upon which' the plaintiff 'solely relies and which is integral to the complaint.'" *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (internal citations omitted). Plan documents are routinely considered in ERISA actions because they are written instruments which are integral to the complaint. *See, e.g.*, *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc*., No. 13-6551, 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016).

[3] The other procedures may have included emergency brain surgery. *See* Am. Compl. ¶ 8.

Thereafter, Sundown's physicians submitted a claim to Defendant for $143,131.98 for the treatment. *Id.* ¶ 12. In response, Defendant issued a payment in the amount of $2,119.05. *Id.* ¶ 13.

Relying on a New York State database which aggregates the costs of various medical procedures, the Amended Complaint alleges that a reasonable and customary charge for the procedures Sundown received is $140,700.00, an amount which "closely correspond[s]" to the $143,131.98 billed by Sundown's physicians. *Id.* ¶¶ 15-16, 19-20, 19 n.1. The Amended Complaint therefore alleges that Defendant's payment of $2,119.05 was not a reasonable and customary amount under the terms of the plan, and that Defendant thus underpaid the claim by $138,580.95. *Id.* ¶¶ 16-17, 18, 21, 24-26. In response, "Plaintiff" filed internal appeals challenging the amount paid, but Defendant did not issue further payments.[4] *Id.* ¶¶ 22-23.

On May 3, 2023, Sundown executed a New York Statutory Short Form Power of Attorney appointing Dr. Farkas as his attorney in fact for three matters: "insurance transactions," "claims and litigation," and "financial matters related to health care; records, reports, and statements."[5] *Id.* ¶¶ 2-4; Pl.'s Exs. 3-4. Approximately six weeks later, this action was filed by "ANDREW SUNDOWN by his attorney in fact Jeffrey Farkas, M.D. under a power of attorney." *Id.* at 1, 5.

The action was brought pursuant to the ERISA civil enforcement provision, codified in 29 U.S.C. § 1132(a)(1)(B),[6] for a failure to make payments in accordance with the terms of a member's health plan. *Id.* at 4-5. Thereafter, Defendant moved to dismiss the Amended Complaint

---

[4] The Amended Complaint does not specify whether Sundown or Dr. Farkas filed these appeals. Am. Compl. ¶ 22. While the power of attorney does authorize Dr. Farkas to handle such matters, the Amended Complaint's other paragraphs consistently use the term "Plaintiff" to refer to Sundown, not Dr. Farkas. *See* Am. Compl. ¶ 3; Pl.'s Exs. 3-4. Thus, the Court presumes that the internal appeals were filed by Sundown.

[5] Although not pleaded, Dr. Farkas is the owner of the Jeffrey Farkas, M.D., LLC practice group. Plaintiff's memorandum states as such. *See* Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss Pl.'s Am. Compl. ("Pl.'s Opp'n") 2, ECF No. 14.

[6] 29 U.S.C. § 1132(a)(1)(B) is the codified provision of the Employee Retirement Income Security Act (ERISA) § 502(a)(1)(B); these provision numbers are often used interchangeably. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 204 (2004).

for lack of subject matter jurisdiction under FRCP 12(b)(1) on the ground that it fails to establish Article III standing, as well as for failure to state a claim pursuant to FRCP 12(b)(6) on the ground that an attorney in fact is not an authorized plaintiff under ERISA § 502(a)(1)(B).

The Honorable Joan M. Azrack referred the motion to me for this Report and Recommendation. *See* Referral Order dated Oct. 18, 2023.

## LEGAL STANDARD

### I.    Rule 12(b)(1) Standard.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova,* 201 F.3d at 113. A defendant's challenge for lack of Article III standing, at the motion to dismiss stage, is properly raised under Rule 12(b)(1) for lack of subject matter jurisdiction. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, . . . [s]uch a dismissal is one for lack of subject matter jurisdiction." (quotation omitted)); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). "[W]ithout jurisdiction, [a] district court lacks the power to adjudicate the merits of [a] case or dismiss a case with prejudice." *John*, 858 F.3d at 735 (quotations omitted). Thus, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Id.* (quotation omitted); *see also Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 106 (2d Cir. 2022).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'"

*Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (citation omitted) (alterations in original); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (quotation omitted)).

A Rule 12(b)(1) motion may be either facial or fact-based. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the motion is facial, i.e., based solely on the allegations of the pleading including the complaint and any exhibits attached to it, the plaintiff has no evidentiary burden. *Id.*; *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d. Cir. 2011). The task of the district court is to determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter*, 822 F.3d at 56. Thus, while courts typically do not draw inferences in favor of the plaintiff when assessing jurisdiction, when a Rule 12(b)(1) motion is facial, the court does "accept as true all material [factual] allegations of the complaint, and draw all reasonable inferences in favor of the plaintiff." *John*, 858 F.3d at 736 (quoting *Carter*, 822 F.3d at 56–57).

Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading. *See, e.g.*, *Amidax*, 671 F.3d at 145; *Robinson v. Government of Malaysia*, 269 F.3d 133, 140 n.6 (2d Cir. 2001). "[I]f the affidavits submitted [by the defendant] on a 12(b)(1) motion . . . reveal the existence of factual problems" in the assertion of jurisdiction, plaintiffs must present evidence controverting the alleged defects. *Carter*, 822 F.3d at 57. However, if the defendant's proffered evidence is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing, then the plaintiffs are entitled to rely on the allegations in the pleading. *Id.*

Here, Defendant's Rule 12(b)(1) motion challenges the power of attorney relationship, whether Sundown was billed for the Farkas Group's treatment, and whether Sundown—rather than Aetna—was responsible to pay for the out-of-network treatment. *See* Def.'s Mem. 5–11. These arguments rely on the power of attorney document, the Amended Complaint's language, and page 33 of the health plan (the out-of-network coverage provision), all of which were included in, or attached as exhibits to, the Amended Complaint. *See generally* Am. Compl. Defendant's Article III standing challenge is thus facial.

## II.    Rule 12(b)(6) Standard.

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* In assessing a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 379–80 (2d Cir. 2021) (quotations omitted) (citations omitted) (alterations omitted).

**DISCUSSION**

This case raises a question that is, as of yet, unanswered by the Second Circuit: whether a physician, acting under a mere power of attorney, can bring an action to recover ERISA benefits on behalf of a patient if the lawsuit is filed in the patient's, rather than the physician's, name. To bring an ERISA action, a plaintiff must, separately, have both Article III (constitutional) standing and be among the class of plaintiffs authorized by the statute's text. Before addressing these issues, the Court will first review the differences between Article III standing and whether a plaintiff has a valid cause of action under a statute, a concept formerly known as "statutory standing."

Article III standing is drawn from the language in the Constitution requiring that the "parties suing in federal court establish that a 'Case' or 'Controversy' exists." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). To assess whether Article III standing is met, courts utilize the *Lujan* tripartite test of injury in fact, causation, and redressability. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Article III standing is jurisdictional, and thus motions to dismiss for lack of standing are properly treated as Rule 12(b)(1) motions for lack of subject matter jurisdiction. *John*, 858 F.3d at 735; *Cent. States*, 433 F.3d at 198. Because Article III standing is a constitutional requirement, it cannot be modified or abrogated by Congress. *Am. Psychiatric*, 821 F.3d at 358 (noting that the "requirements of Article III" are "immutable" and thus cannot be modified or abrogated by Congress); *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (citation omitted)); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) ("[S]tatutory factors are separate and apart from the elements of constitutional standing . . . . 'In no event . . . may Congress abrogate the Art. III minima.'"

(quotation omitted)). Dismissals for lack of Article III standing must be without prejudice because dismissals with prejudice are dismissals on the merits, and a court without jurisdiction inherently lacks the jurisdiction to decide merits questions. *Cent. States*, 433 F.3d at 198–99; *John*, 858 F.3d at 735; *Jusino*, 54 F.4th at 106. Thus, as a threshold jurisdictional question, a court must resolve itself that Article III standing has been satisfied before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998) ("[A] merits question cannot be given priority over an Article III question."); *Cent. States*, 433 F.3d at 198 ("Without . . . Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a . . . claim.").

By contrast, the doctrine formerly known as "statutory standing" seeks to "ascertain, as a matter of statutory interpretation, the scope of the private remedy created by Congress . . . and the class of persons who could maintain a private damages action under that legislatively conferred cause of action." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotations omitted) (citation omitted). The inquiry asks whether a given plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" under the statute; in other words, whether the plaintiff "has a cause of action under the statute." *Id.* at 128. While "statutory standing" was previously treated as jurisdictional, the Supreme Court has clarified that the issue is not jurisdictional because it does not speak to federal courts' power to hear a case. *Id.* at 128 n.4. Thus, the term "statutory standing" is "misleading" because it is not, in fact, properly understood as a standing doctrine, since standing is generally a jurisdictional inquiry.[7] *Id.*

To determine whether a plaintiff has statutory authorization, courts must "apply traditional principles of statutory interpretation." *Id.* at 128. Unlike the immutable requirements of Article III

---

[7] Consequently, the Second Circuit has instructed courts not to use the term. *See Am. Psychiatric*, 821 F.3d at 359; *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018). The Court will hereinafter refer to the doctrine as "statutory authorization" for want of another title.

standing, Congress is free to set the class of plaintiffs who are authorized to sue under a statute. *Compare Raines*, 521 U.S. at 820 n.3 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (citation omitted)), *with Lexmark*, 572 U.S. at 128 (noting that, in examining whether a plaintiff is statutorily authorized to sue, courts "cannot limit a cause of action that Congress has created merely because 'prudence' dictates").

Challenges to a plaintiff's statutory authorization are properly understood as Rule 12(b)(6) motions to dismiss for failure to state a claim. *LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*, 361 F. Supp. 3d 348, 351 n.2 (E.D.N.Y. 2019) ("[S]tatutory standing under ERISA . . . is properly analyzed under the Rule 12(b)(6) standard for failure to state a claim." (citing *Am. Psychiatric*, 821 F.3d at 359)); *see also Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559, 2017 WL 6501864, at *2 (E.D.N.Y. Dec. 19, 2017) (holding that Rule 12(b)(1) challenge on statutory standing grounds "fails because it is really a 12(b)(6) claim"). As dismissals under Rule 12(b)(6) are evaluations on the merits, such dismissals can be made with prejudice. *Jusino*, 54 F.4th at 106. Moreover, as a merits analysis, courts cannot address statutory authorization until Article III standing challenges have been resolved. *Steel Co.*, 523 U.S. at 97 n.2; *Cortlandt*, 790 F.3d at 417. Notably, distinguishing dismissals under Rule 12(b)(1) from those under Rule 12(b)(6) is important because dismissals on the merits typically have preclusive effect. *Alliance for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006).

The Court will first discuss Defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of standing, before proceeding to the merits of whether Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).[8]

## I. The Court Should Deny the Rule 12(b)(1) Motion Because Sundown Has Article III Standing to Bring the Action, Both on His Own and Through an Attorney in Fact.[9]

Defendant first argues that "Plaintiff" lacks Article III standing to bring this action. Def.'s Mem. 5. Defendant's challenge proceeds, in substantial part, by analyzing standing from the perspective of Dr. Farkas, rather than Sundown—arguing that Dr. Farkas lacks Article III standing to sue because Dr. Farkas does not have a valid assignment of benefits and thus cannot establish the requisite injury in fact. *Id.* at 5–11. Secondarily, Defendant argues that Sundown himself has suffered no Article III injury because: (1) the Amended Complaint does not allege that the Farkas Group has attempted to bill Sundown, and (2) Sundown was responsible for the charges under the terms of the contract and thus was not injured by being liable for an amount he was contractually obligated to pay. *Id.* at 9–10. If Sundown lacks standing, it would necessarily defeat Dr. Farkas's standing, and thus the Court will first address Sundown's Article III standing, in both parts, before proceeding to Dr. Farkas's standing. *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258–59 (2d Cir. 2015) ("An 'assignee acquires no greater rights . . . than his assignor.'" (quotation omitted)); *Chiron Recovery Ctr., LLC v. UnitedHealth Grp.*, Inc., No. 9:18-CV-81761, 2019 WL 7584968, at *5 (S.D. Fla. Aug. 9, 2019) ("Where a person brings suit under a power of attorney, the court's jurisdiction depends on the status of the real party-in-interest, not on the person holding the power of attorney." (citations omitted)).

---

[8] Defendant's motion presents three arguments: Article III standing, "statutory standing," and an argument that assignments are invalid under the plan's anti-assignment provision. *See* Def.'s Mem. Because assignments implicate both Article III standing and "statutory standing," the Court will address Defendant's arguments in two parts.

[9] While Defendant moves to dismiss the Amended Complaint with prejudice, see Def.'s Mem. 16, the Court will consider whether to grant the Rule 12(b)(1) motion without prejudice. *Jusino*, 54 F.4th at 106.

A. *Sundown Plausibly Alleges that He Is Liable for the Outstanding Balance Owed, and Thus Sufficiently Alleges an Article III Injury-In-Fact, Even if He Has Not Been Billed.*

To establish Article III standing, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan*, 504 U.S. at 560–61). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2206 (2021). The injury-in-fact element requires that the plaintiff be "the proper party to bring this suit." *Carter*, 822 F.3d at 55; *Raines*, 521 U.S. at 818. "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute. . ." *Raines*, 521 U.S. at 819. Any monetary loss suffered by the plaintiff satisfies this element; "[e]ven a small financial loss" suffices. *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013).

Non-monetary harms can also constitute an injury-in-fact. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262–63 (1977). In the context of an underpayment of health plan benefits, "the denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services" because a "wrongful denial of plan benefits breaches the parties' contract and deprives the participant of the benefit of their bargain." *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.* (*Med. Soc'y II*), No. 16-CV-5265, 2021 WL 4263717, at *2 (S.D.N.Y. Sept. 20, 2021) (first quoting *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018); and then quoting *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020)) (collecting cases).

Defendant's argument that the Amended Complaint fails to allege that the Farkas Group has attempted to bill Sundown for the outstanding balance of his treatment is unavailing. Sundown

- 11 -

is not required to demonstrate monetary loss to establish Article III injury because he is "contractually entitled to plan benefits" and is thus "injured . . . when a plan administrator fails to pay a healthcare provider in accordance with the terms of [his] benefits plan." *Id.* (quoting *Mitchell*, 953 F.3d at 536). In fact, courts have held that an underpayment of benefits is sufficient to establish Article III injury even in cases where the providers had expressly absolved the patients of out-of-pocket liability for sums not covered by the plan administrators. *See, e.g.*, *id.* (collecting cases from "at least five Circuits"); *Mitchell*, 953 F.3d at 533–36. These courts have held that a denial of bargained-for benefits satisfies all aspects of Article III's injury-in-fact prong[10]: "The denial of benefits to which a plan participant is contractually entitled is a particularized injury that affects the participant in a personal and individual way. It is also a concrete injury that actually exist[s] . . . . A court can redress this injury by awarding the contractual benefits . . . ." *Med. Soc'y II*, 2021 WL 4263717, at *2–3 (quoting *Mitchell*, 953 F.3d at 536). In fact, Defendant's motion apparently concedes that the pleading details a denial of bargained-for benefits. Def.'s Mem. 10 ("The only alleged 'harm' [in the Amended Complaint] is Aetna's purported under-reimbursement of claims submitted by the Farkas Group.").

While the denial of bargained-for benefits is, alone, sufficient to establish Article III injury, *id.* ("The injury here . . . is the alleged denial of contractual benefits, *not* alleged monetary harm." (emphasis in original)), the Amended Complaint here does not allege that Sundown has been absolved of monetary liability, nor does Defendant so argue. Rather, the Complaint alleges that the charges Defendant did not cover "are Plaintiff's responsibility," that "Defendant's failure to properly pay" those charges has "exposed Plaintiff" to $138,580.95 in additional liability, and that

---

[10] Defendant does not challenge the other two prongs of Article III standing, causation and redressability, see Def.'s Mem. 9-10, but the Court is satisfied that Plaintiff plausibly alleges that Defendant caused the alleged underpayment and that the injury would be redressed by the requested relief.

Plaintiff not only suffered damages, but "continues to suffer damages." Am. Compl. ¶¶ 27–28, 36. Reading the pleading in a light favorable to the plaintiff, as this Court is required to do, see *John*, 858 F.3d at 736, Sundown has plausibly alleged that he remains liable for an outstanding balance, which constitutes a monetary harm. To the extent that Defendant argues that this monetary liability is Sundown's contractual responsibility under the plan, and that Sundown is thus not injured by having to pay it, the Court will analyze this argument next.

  B. *The Extent of Sundown's Contractual Responsibility Is a Question of Fact that Is Premature at the Motion to Dismiss Stage.*

  Defendant next argues that, under the terms of the health plan, Sundown was responsible for out-of-network services that were not covered by Defendant, and that having to pay for services that Sundown is contractually obligated to pay for does not constitute an Article III injury. Def.'s Mem. 10. While the conclusion is characterized as an Article III standing issue, Defendant essentially argues that Plaintiff's action under ERISA § 502(a)(1)(B) "to recover benefits due to him under the terms of the plan" fails to state a claim because the benefits were not, in fact, due to him under the plan. *See* Def.'s Mem. 10 ("'Exposure' to member liability under the terms and conditions of the applicable health benefits Plan is not a 'concrete and particularized' harm."). While this argument would be better understood as a Rule 12(b)(6) challenge for failure to state a claim, Defendant's argument misconstrues the standard of review applicable to both Article III standing challenges and challenges for failure to state a claim at the motion to dismiss stage.

  "[T]o survive . . . [a] Rule 12(b)(1) motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Amidax*, 671 F.3d at 145 (citation omitted). Similarly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plausibly plead the requisite elements of a cause of action. *Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416, 429 (D. Conn. 2022) (noting that the standards of review under Rule

12(b)(1) and Rule 12(b)(6) "are substantively identical"); *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040, 2023 WL 2477499, at \*3 (D. Conn. Mar. 13, 2023) (finding that the plausibility pleading standard applies to both Article III standing and failure to state a claim). While the Second Circuit has recently noted that applying the plausibility standard to Article III standing is in some tension with its decision in *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110, 112 (2d Cir. 2018), in which it ruled that "the pleading standard for constitutional standing is lower than the standard for [injury as an element of] a substantive cause of action," because standing allegations need only be "colorable," the court has yet to resolve this tension. *Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota*, No. 22-561-CV, 2022 WL 17086483, at \*2 (2d Cir. Nov. 21, 2022) ("[O]ur caselaw exhibits some tension regarding the requisite pleading standard for purposes of standing. . . . We need not resolve this tension here . . . ." (citations omitted)). Nevertheless, to survive either a Rule 12(b)(1) challenge or a Rule 12(b)(6) challenge, a plaintiff is not required to *prove* Article III injury or the substantive elements of a cause of action; at the most, a plaintiff must *plausibly allege* such matters. The Amended Complaint plausibly alleges both.

i. Sundown Plausibly States a Claim that Benefits Were Due Under the Plan.

The Court's role at the pleadings stage is "to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original). Rule 12(b)(6) "thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Id.* "The streamlined testing of the substantive merits . . . is more appropriately reserved for the summary judgment procedure . . . where both parties may 'conduct appropriate discovery and submit the

additional supporting material contemplated by' that rule." *Id.* (quotation omitted) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("Although the mere allegation of the existence of [a fact] would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment . . . .")).

Defendant's argument that Sundown was responsible, under the terms of the plan, to pay the balance and thus that no benefits were due assumes that Sundown was obligated to pay whatever sums Defendant chose not to pay. Def.'s Mem. 10 (arguing that "the Plan . . . clearly states that Mr. Sundown would be responsible for bills from . . . out-of-network provider[s], not covered by Aetna" and thus Sundown was only "'[e]xpos[ed]' to member liability under the terms and conditions of the applicable health benefits Plan"). However, this misconstrues the language of the health plan. The plan does not stipulate that Sundown is responsible for all out-of-network services, or amounts which Aetna, in its sole discretion, chose not to cover. Rather, Defendant was responsible for a specific amount of Sundown's treatment—the "Reasonable and Customary (R&C)" price for out-of-network emergency services—while Sundown was responsible for balances *in excess of* those for which Defendant was responsible. Pl.'s Exs. 9-10. Thus, the amount of Sundown's contractual liability necessarily depends upon the amount Defendant was obligated to cover. This dollar value constitutes the "benefits due" element of ERISA § 502(a)(1)(B).

To determine that amount, the Court would need to engage in extensive factfinding, including interpreting the contract to define the term "Reasonable and Customary (R&C) charge," and weighing outside evidence to determine the cost of a cerebral angiogram in light of that definition. These factual findings are premature at the motion to dismiss stage because they are questions for which Plaintiff—and, indeed, Defendant—is entitled to present evidence on the merits. *Glob. Network*, 458 F.3d at 155 (noting that factfinding based on extrinsic evidence is

inappropriate on a motion to dismiss because plaintiffs need an opportunity to contest extrinsic evidence). Instead, the Court's role here is to assess the formal sufficiency of Plaintiff's allegation that a benefit was due under the plan. *See id.*

To that end, the Amended Complaint alleges, by providing data from a New York State database which aggregates "reasonable and customary" costs for various medical procedures, that $140,700.00 is the reasonable and customary cost of Sundown's treatment. Am. Compl. ¶¶ 16-17, 19, 19 n.1, 20-21. It further alleges that Defendant's payment of $2,119.05 did not comply with the terms of the health plan entitling Sundown to coverage in the amount of "the Reasonable and Customary (R&C) charge for the involuntary service or supply" because the amount differs greatly from the New York database. *Id.* ¶¶ 18-21, 24-26; Pl.'s Exs. 9-10. While Defendant appears to challenge Plaintiff's reliance on the New York database by arguing that the New York statutory scheme does not govern Sundown's plan, the Amended Complaint does not allege that New York law or data govern the terms of the plan. Def.'s Mem. 9; Am. Compl. ¶¶ 15-16, 19-21, 19 n.1, 32-35. Rather, the Amended Complaint uses the New York database as an evidentiary source to allege that the phrase "Reasonable and Customary (R&C)" in the plan should be interpreted according to the common meaning of that same phrase in other, similar contexts. *See* Am. Compl. 3.

Far from a bare, conclusory recitation of the element that "benefits [were] due to [Sundown] under the terms of the plan," see *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotations omitted)); ERISA § 502(a)(1)(B), the Amended Complaint presents facts and data to support this contention, and utilizes a plausible interpretation of the contract language to do so. This legal feasibility is all that is required at this

juncture. *Glob. Network*, 458 F.3d at 155. Thus, the Amended Complaint plausibly alleges that benefits were due under ERISA § 502(a)(1)(B), thereby stating a claim for that element.

        ii.   <u>Because Sundown Plausibly States a Claim that Benefits Were Due, His Liability for those Sums Constitutes an Injury.</u>

The Article III aspect to Defendant's argument that Sundown was not injured by having to pay sums he was responsible for is unavailing because it is really a Rule 12(b)(6) argument, not an Article III standing argument. In any breach of contract action, an allegation that a plaintiff suffered injury due to a breach of the contract terms necessarily assumes that there was a breach of the contract terms. In fact, injury in ERISA cases routinely rests on the assumption that the plaintiffs were contractually entitled to the unpaid benefits. *See, e.g.*, *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.* (*Med. Soc'y I*), 332 F.R.D. 138, 144–45, 147 (S.D.N.Y. 2019) (holding refusal to pay facility fees, which "Plaintiffs contend[ed] [was] contrary to the terms of United's health benefits plans," to be a "sufficient injury-in-fact to confer Article III standing"). Thus, plaintiffs are not required to prove the meaning of the language in their benefits plans by a preponderance of the evidence at the pleadings stage to plausibly allege Article III injury. *See id.*; *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) ("[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury.").

In sum, the Amended Complaint both plausibly alleges that Sundown suffered an Article III injury in fact, and plausibly states a claim that benefits were due under the plan.

     C.  *Sundown, and Thus Sundown Through His Agent Dr. Farkas, Has Article III Standing to Bring this Action in Sundown's Name, for Sundown's Benefit.*

Defendant's Rule 12(b)(1) motion to dismiss argues, in large part, that Dr. Farkas lacks a cognizable injury in fact, and thus Article III standing, to prosecute this action. Def.'s Mem. 5–11. In support, Defendant cites well-settled Second Circuit caselaw holding that an agent, acting under

a mere power of attorney, does not have Article III standing to bring an action in the agent's name, absent a complete transfer of title pursuant to a valid assignment. *See* Def.'s Mem. 5–9 (first citing *Cortlandt*, 790 F.3d at 415, 418, 420; then citing *W.R. Huff*, 549 F.3d at 106–08; and then citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18 (2d Cir. 1997)).[11] However, Defendant argues that no such assignment is possible here because the plan contains an unambiguous anti-assignment provision. Def.'s Mem. 11, 14-15. Defendant thus contends that the case caption identifying Sundown as the named plaintiff "is of no legal moment," and that the Amended Complaint "attempts to tip-toe around Second Circuit precedent by focusing on form over substance." Def.'s Mem. 9. In reality, Defendant argues, Dr. Farkas is the true plaintiff in this action, but Dr. Farkas lacks Article III standing. Def.'s Mem. 9.

In response, Plaintiff does not dispute that unambiguous anti-assignment clauses are valid and enforceable, nor does Plaintiff dispute that the health plan contains such a provision. Pl.'s Opp'n 2. Moreover, Plaintiff agrees that the Second Circuit has routinely held that an agent, acting under a mere power of attorney, lacks standing to pursue an action in the agent's name or on the agent's behalf. Pl.'s Opp'n 2. Instead, Plaintiff argues that this caselaw is inapposite because the instant action is being prosecuted in the principal's name, and on the principal's behalf. Pl.'s Opp'n 2–3, 5, 7. Plaintiff contends that Sundown authorized Dr. Farkas to pursue claims and litigation on Sundown's behalf, and that there is no caselaw limiting a principal's freedom of choice in selecting an agent. Pl.'s Opp'n 2, 5–7. In sum, Plaintiff argues that Sundown retains ownership over the claim, that Sundown is the Plaintiff for all purposes, and that Sundown is allowed to choose any

---

[11] Courts are cautioned to carefully distinguish between dismissals on jurisdictional grounds under Rule 12(b)(1) and those on non-jurisdictional grounds under Rule 12(b)(6), see *Jusino*, 54 F.4th at 102–05, and to mindfully examine whether precedents utilizing the term "standing" are truly jurisdictional. *See Harry*, 889 F.3d at 111; *Klein*, 906 F.3d at 220 (noting the "sometimes-incautious way the word 'standing' has been used"). As such, the Court notes that *Cortlandt* and *W.R. Huff* are expressly Article III holdings and, to the extent that both discuss at length and reaffirm *Advanced Magnetics*, the Court understands *Advanced Magnetics* to be an Article III holding as well. *Cortlandt*, 790 F.3d at 416–20; *W.R. Huff*, 549 F.3d at 106–08; *Advanced Magnetics*, 106 F.3d 11.

agent he wants to aid in that effort. *See* Pl.'s Opp'n 5–7. Thus, the question presented is whether, for purposes of Article III standing, the Court should examine injury from the perspective of Sundown, the purported named plaintiff, or Dr. Farkas, the agent.

As both parties contend, Second Circuit precedent is clear that a mere power of attorney, as opposed to an assignment, does not confer Article III standing sufficient to enable the attorney in fact to bring suit in the attorney in fact's name. *See, e.g.*, *Advanced Magnetics*, 106 F.3d at 17–18 ("The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone, . . . does not enable the grantee to bring suit *in his own name*." (emphasis added) (citing *Titus v. Wallick*, 306 U.S. 282, 289 (1939))); *Cortlandt*, 790 F.3d at 420 ("Our caselaw confirms that a purported assignee of a claim must plead a proprietary interest in that claim, and not simply the ability to pursue the claim on behalf of another, to bring the claim *in his or her own name* and satisfy the requirements of constitutional standing." (emphasis added)); *W.R. Huff*, 549 F.3d at 108 ("*Sprint* therefore implicitly supports the holding of *Advanced Magnetics* that a mere power-of-attorney—i.e., an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor—does not confer standing to sue *in the holder's own right*." (emphasis added) (citation omitted)); *see also W.R. Huff,* 549 F.3d at 107 ("[T]he dispositive question is whether Huff, *as the named plaintiff*, can demonstrate an "injury-in-fact" through some other means, such as an assignment of claims." (emphasis added)).

However, none of these cases held that an attorney in fact is prohibited from bringing an action in the *grantor's* name, nor do they limit (or clarify) the extent of an agent's permissible participation in an action (for example, merely hiring an attorney, or regularly communicating with that attorney). In fact, the foregoing cases appear to endorse the proposition that an agent *is* entitled to assist with or pursue an action in the principal's name for which the principal has the requisite

- 19 -

Article III standing. For example, in *W.R. Huff*, the Second Circuit noted that, although there was no valid assignment for Huff to pursue an action in its own name, "Huff's power-of-attorney permits it to serve as an agent of its clients and to conduct litigation on behalf of its clients as their attorney-in-fact," and that "Huff enjoys the authority to make some decisions concerning litigation." 549 F.3d at 109. Moreover, in *Advanced Magnetics*, the Second Circuit held that the agreements at issue were powers of attorney, rather than assignments, and remarked that, as such, they "arguably gave AMI power of attorney to bring suit in the names of the individual selling shareholders, but they did not purport to transfer title or ownership to AMI." 106 F.3d at 18.

*Sorotzkin v. EmblemHealth Inc.*, which was decided by the Second Circuit while the instant motion was pending, is instructive. No. 22-3194, 2023 WL 7383169 (2d Cir. Nov. 8, 2023). There, Sorotzkin, the owner of a therapy practice called Brainbuilders LLC, brought an action as attorney-in-fact on behalf of the practice's patients to recover for out-of-network treatment, with the patients as the named plaintiffs. *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21 CIV. 4627, 2022 WL 3156179, at *2–3, *5 n.4 (S.D.N.Y. Aug. 8, 2022), *aff'd sub nom. Sorotzkin*, 2023 WL 7383169. The Second Circuit held that Sorotzkin had Article III standing[12] to pursue the action as attorney-in-fact for the patients. *Sorotzkin*, 2023 WL 7383169, at *1–2. The court reasoned that "[a] person granted a power of attorney may bring lawsuits only on behalf of, and for the benefit of, the grantor" and thus, because "[a] power of attorney does not 'transfer an ownership interest in the claim,' . . . Sorotzkin could sue as attorney-in-fact only for the benefit of [the patients], not for her own benefit." *Id.* at *1 (quoting *Advanced Magnetics*, 106 F.3d at 17-18). Thus, *Sorotzkin* supports

---

[12] The district court and Second Circuit decisions use only the term "standing," see *Sorotzkin*, 2023 WL 7383169, at *1–2, *Brainbuilders*, 2022 WL 3156179, at *4–7, but the motion at issue was brought under Rule 12(b)(1) challenging a lack of Article III standing. *See* Mem. Law Supp. Defs.' Mot. Dismiss Second Am. Compl., *Brainbuilders*, 2021 WL 7450064.

the proposition that *Advanced Magnetics*, *W.R. Huff*, and *Cortlandt* permit actions brought in the principal's name, for the principal's benefit. *See id.*

Notably, the health plan at issue in *Sorotzkin* had an unambiguous anti-assignment provision. *Brainbuilders*, 2022 WL 3156179, at *4–5. The district court below held that this provision invalidated an assignment that had been granted to Brainbuilders, thus barring Brainbuilders from serving as a plaintiff. *Id.* However, the court held that the anti-assignment provision did not preclude Sorotzkin from acting as an attorney in fact, reasoning that a power of attorney is a different device than an assignment. *Id.* On appeal, the Second Circuit did not disturb this holding, and upheld Sorotzkin's power of attorney notwithstanding the anti-assignment provision. *Sorotzkin*, 2023 WL 7383169, at *1–2. In doing so, the court applied a test to determine whether the action was truly being brought on behalf of the patients, as opposed to Sorotzkin or Brainbuilders, examining whether the complaint plausibly alleged that the patients had suffered harm and whether it was written from the patients' perspectives. *Id.* at *1–2.

Here, as previously discussed, when viewed from the perspective of Sundown, the Amended Complaint plausibly alleges both monetary and non-monetary Article III injury. Furthermore, applying the test in *Sorotzkin*, the Amended Complaint is written from Sundown's perspective, in that it consistently uses the term "Plaintiff" to refer only to Sundown, and details only those remedies that would redress Sundown, not Dr. Farkas or the Farkas Group. *See* Am. Compl. 1–2. Specifically, the Amended Complaint alleges that the Farkas Group charged $143,131.98 for the treatment, and that Defendant paid $2,119.05. Am. Compl. ¶¶ 12–13. While this leaves Sundown with an outstanding balance of $141,012.93, the Amended Complaint alleges that the reasonable and customary cost of the services is $140,700.00, and thus seeks $138,580.95

- 21 -

in relief—the amount in benefits that is allegedly due to Sundown under the plan, rather than the amount that would make the Farkas Group whole. Am. Compl. ¶¶ 16-17, 27, 29.

Moreover, while *Sorotzkin* involved state law breach of contract actions, rather than ERISA, see *Sorotzkin*, 2023 WL 7383169, at *2–3, the Supreme Court and the Second Circuit have repeatedly emphasized that Article III standing analyses are unaffected by statutory language or congressional intent because Article III's requirements are constitutional and thus cannot be statutorily abrogated or modified. *Cent. States*, 433 F.3d at 200; *Cortlandt*, 790 F.3d at 417; *Am. Psychiatric*, 821 F.3d at 358 (noting that the "requirements of Article III" are "immutable" and thus cannot be modified or abrogated by Congress (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997))); *see also Raines*, 521 U.S. at 820 n.3; *W.R. Huff*, 549 F.3d at 106 ("[S]tatutory factors are separate and apart from the elements of constitutional standing . . . ." (quotation omitted)).

As in *Sorotzkin*, Article III standing is analyzed from the perspective of the principal, not the agent, when the action is brought in the principal's name and for the principal's benefit, regardless of whether it is an ERISA or non-ERISA action. *Sorotzkin*, 2023 WL 7383169, at *1–2. In fact, other cases in this district addressing the question presented here have barred ERISA actions brought via powers of attorney but have done so on the grounds that they failed to state a claim under ERISA, not a lack of Article III standing, even when the defendant characterized the challenge in Article III terms. *See, e.g.*, *Karkare on behalf of JP v. Aetna Life Ins. Co.*, No. 21-CV-7152, 2023 WL 2731732, at *3–5 (E.D.N.Y. Mar. 31, 2023) [hereinafter "*Karkare JP*"] (noting that defendant challenged plaintiff's "Article III constitutional standing" but dismissing under Rule 12(b)(6) "for failure to state a cause of action under ERISA" because "Plaintiff lack[ed] a cause of action" thereunder).

Finally, Defendant argues that, since attorneys in fact are prohibited from gifting the principal's property to themselves, Dr. Farkas cannot act as Sundown's agent because he would be engaging in "future self-dealing,". Def.'s Mem. 10. However, *Sorotzkin* permitted the use of the device in factually identical circumstances: Sorotzkin, like Dr. Farkas, was the owner of the practice, but was not alleged to be the physician who rendered the treatment. *Sorotzkin*, 2023 WL 7383169; *Brainbuilders*, 2022 WL 3156179, at *5 n.4. Moreover, Defendant fails to explain why payments of the principal's property to the Farkas Group would constitute "gifts" rather than debt payments, as a debt is, by definition, not a "gift." Thus, the Court finds the matter to be waived.

For the foregoing reasons, the Court respectfully recommends that Defendant's motion to dismiss pursuant to Rule 12(b)(1) be denied.

## II. The Action Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff's Attorney-In-Fact Does Not Have a Cause of Action Under ERISA § 502(a)(1)(B).

The Court will first address Defendant's argument that Plaintiff, in opposition, has failed to address one of Defendant's two challenges to the Amended Complaint,[13] before proceeding to the statutory authorization challenge.

### A. Plaintiff Has Waived Neither the Rule 12(b)(1) nor the Rule 12(b)(6) Challenge.

Defendant argues on reply that "Plaintiff's Opposition does not delineate and appears to conflate Article III constitutional standing with statutory standing under ERISA" and that, because of this error, Plaintiff cites to Third Circuit cases to argue "that Plaintiff has standing, generally." Reply Mem. Law Further Supp. Def.'s Mot. Dismiss Pl.'s Am. Compl. ("Def.'s Reply") 2, ECF No. 15. Defendant argues that these cases "are inapposite and distinguishable in that they do not address Article III standing." Def.'s Reply 2. The Court understands Defendant's argument to be

---

[13] Defendant mistakenly presents this matter as a Rule 12(b)(1) argument, rather than a Rule 12(b)(6) argument, and thus the Court will instead address the issue here.

- 23 -

that Plaintiff has waived with respect to the Article III challenge, and that the Rule 12(b)(1) motion should thus be granted. While the Court agrees that Plaintiff mistakenly unifies the doctrines, the Court disagrees that the matter is waived.

Second Circuit cases discussing whether an attorney in fact can bring an action on behalf of a principal do so in two different ways. First, cases such as *Cortlandt*, *W.R. Huff*, and *Advanced Magnetics* examine the Article III standing of attorneys in fact when an assignment fails to transfer a complete interest, concluding that the purported assignees lack Article III standing to sue in the assignees' names because ownership of the injury-in-fact was not effectively transferred from the grantor to the grantee. *Cortlandt*, 790 F.3d at 416–20; *W.R. Huff*, 549 F.3d at 106–08; *Advanced Magnetics*, 106 F.3d 11. By contrast, *American Psychiatric* examined whether physicians with incomplete assignments have statutory authorization to sue (formerly "statutory standing") under ERISA to bring an action in their own names on the theory that the physicians were representing the interests of the patients. *Id. See* 821 F.3d at 359–60.

Plaintiff's memorandum principally cites four cases: *Cortlandt*, *W.R. Huff*, *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018), and *Abramson v. Aetna Life Insurance Company*, No. 2:22-CV-5092, 2023 WL 3199198 (D.N.J. May 2, 2023). *See generally* Pl.'s Opp'n. As discussed, *Cortlandt* and *W.R. Huff* are Article III cases. Furthermore, while *American Orthopedic* uses only the term "standing," the opinion analyzes Article III cases including *W.R. Huff* and *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 273-75 (2008), and discusses an assignee's acquisition of an ownership interest in a claim—an Article III concept. *Am. Orthopedic*, 890 F.3d at 454–55. Thus, contrary to Defendant's argument, the case does address Article III standing. Finally, *Abramson* engages in a lengthy discussion of "standing," citing to both Article III cases (including a case that relies on

- 24 -

*Advanced Magnetics*) and "statutory standing" cases, and analyzing both whether the patients suffered "harm" and the statutory text of ERISA § 502(a)(1)(B). *See Abramson*, 2023 WL 3199198, at *7 ("[W]here . . . there is no allegation the patient suffered any harm, the attorney-in-fact's standing is barred . . . . [T]he Court applied the decision in *Somerset Orthopedic* to find statutory standing for plaintiff-physicians to assert ERISA claims." (citations omitted)). The paragraph of *Abramson* on which Plaintiff relies appears primarily focused on Article III topics. *See id.* at *6; Pl.'s Opp'n 8. Thus, Plaintiff has discussed Article III and has not waived the issue.

The Court further finds that Plaintiff has not waived with respect to the statutory authorization challenge. First, *Abramson* engages in a largely interrelated analysis. *See Abramson*, 2023 WL 3199198, at *6–7. Moreover, given the longstanding confusion of courts, parties, and both Plaintiff's opposition and Defendant's reply in distinguishing between the doctrines, Plaintiff's unified discussion of "standing" is, though incorrect as a matter of law, understandable. Finally, Plaintiff's argument that there is a paucity of precedent addressing the questions presented in this case, Pl.'s Opp'n 8, is especially persuasive with respect to the Rule 12(b)(6) issue. Thus, this Court finds that Plaintiff has not waived with respect to the Rule 12(b)(6) challenge.

### B. Dr. Farkas Does Not Have a Cause of Action Under the Text or Legislative Intent of ERISA § 502(a)(1)(B).

In support of the Rule 12(b)(6) motion to dismiss, Defendant argues that Dr. Farkas lacks a cause of action under ERISA § 502(a)(1)(B) because the statutory language only permits "participants" and "beneficiaries" to sue and the Second Circuit has held that, absent a recognized precedential exception, physicians are neither participants nor beneficiaries. Def.'s Mem. 11-13. Defendant argues that the Second Circuit has recognized one narrow exception to this rule: when a participant or beneficiary assigns rights in a plan to a provider in exchange for treatment. Def.'s Mem. 13-14. By contrast, Plaintiff does not allege that there has been an assignment, nor does

Plaintiff argue that Dr. Farkas is a participant or beneficiary. *See* Pl.'s Opp'n 2, 5. Rather, Plaintiff argues that a power of attorney is a different device than an assignment. *See* Pl.'s Opp'n 2, 5–7. The Court understands Plaintiff's argument to be that "standing" should be examined from the perspective of the principal rather than the agent when the principal is the named plaintiff.

Under ERISA § 502(a)(1)(B), a "participant or beneficiary" of a plan can bring an action to recover benefits. 29 U.S.C. § 1132(a)(1). Physicians who provide care to patients are neither participants nor beneficiaries under the patients' health plans. *Karkare on behalf of Patient D.P. v. Cigna Life & Health Ins. Co.*, No. 21-CV-6983, 2023 WL 2711046, at *3 (E.D.N.Y. Mar. 30, 2023) [hereinafter "*Karkare D.P.*"]; *Rojas*, 793 F.3d at 257. However, a physician can nevertheless have a cause of action under ERISA if the physician obtains an assignment of benefits. *Am. Psychiatric*, 821 F.3d at 361 (describing this as a "narrow exception" to the statutory language). To do so, the assignment must be valid, in that it cannot be barred by an anti-assignment provision, *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147–48 (2d Cir. 2017), and the patient must assign the claim to the provider in exchange for health care—in other words, the assignment must be supported by consideration. *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328–29 (2d Cir. 2011); *Am. Psychiatric*, 821 F.3d at 361.

In *American Psychiatric*, the Second Circuit rejected an argument that physicians, despite not having assignments or having invalid assignments, should nevertheless be permitted to sue on behalf of their patients under a "prudential standing" theory. *Am. Psychiatric*, 821 F.3d at 359–61. However, the physicians in *American Psychiatric* did not actually allege that they were granted statutory short form powers of attorney, nor were the patients the named plaintiffs in the action—differences which are particularly relevant to the question presented here. *Id.* Thus, *American Psychiatric* is instructive, but does not directly answer the question presented.

However, cases in this district addressing the question presented here have held that the analysis in *American Psychiatric* precludes a physician from bringing an ERISA action via a power of attorney on a patient's behalf, even when brought in the patient's name. *See, e.g.*, *Karkare JP*, 2023 WL 2731732, at *4; *Karkare D.P.*, 2023 WL 2711046, at *3–5. These cases have noted that the Second Circuit and Supreme Court have instructed courts to "construe[ ] § 502 narrowly to permit only the parties enumerated therein to sue directly for relief" because the provision "strictly limit[s] the universe of plaintiffs who may bring certain civil actions." *Karkare D.P.*, 2023 WL 2711046, at *3 (first quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001); and then quoting *Am. Psychiatric*, 821 F.3d at 359-60) (internal quotations omitted); *Karkare JP*, 2023 WL 2731732, at *4 (quoting *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002)) (internal quotations omitted). In analyzing whether the "plaintiff" was statutorily authorized to sue, *Karkare D.P.* and *Karkare JP* examined the issue from the perspective of the physicians, rather than the named plaintiffs (i.e., the patients). *See, e.g.*, *Karkare JP*, 2023 WL 2731732, at *4. While this analysis differs from the Article III standing analysis in *Sorotzkin*, this difference reflects the conceptual differences between Article III standing and "statutory standing." Unlike Article III standing, courts must consider the text of the statute and the legislative intent in determining whether a plaintiff is statutorily authorized to sue. *Lexmark*, 572 U.S. at 128–29, 128 n.4. Thus, cases in this district that have addressed this question dismissed these actions on Rule 12(b)(6) (statutory authorization) grounds, not Rule 12(b)(1) (Article III) grounds. *See, e.g.*, *Karkare JP*, 2023 WL 2731732, at *4; *Karkare D.P.*, 2023 WL 2711046, at *3–5.

This Court finds those prior holdings persuasive. Congress did not intend to authorize physicians to bring actions under ERISA § 502(a)(1)(B), and an interpretation allowing a power of attorney to be utilized to circumvent ERISA's statutory language and unambiguous anti-

assignment provisions in plans would frustrate that intent. *See Karkare JP*, 2023 WL 2731732, at *4; *Karkare D.P.*, 2023 WL 2711046, at *3–5. However, the Court disagrees with Defendant's argument that the case caption listing Sundown as the plaintiff is "of no legal moment" and that to allow such an action would elevate form over substance. Def.'s Mem. 9. The Court is mindful that, for a number of reasons, the identity of the named plaintiff to an action may impact the relationships involved in a substantive, as opposed to merely formal, way, including the person to whom counsel owes ethical obligations as a client, the person with the ultimate authority to decide the course of a litigation when the principal and agent disagree, and the person against whom a dismissal with prejudice would have preclusive effect.[14] Moreover, it is unclear how one would cure the statutory authorization issue here. While FRCP 17, which allows the substitution of a real party in interest, can typically be used to join the correct party, no such substitution is possible: Sundown, the only real party in interest, is already the named plaintiff. *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 78, 83–84, 84 n.18 (2d Cir. 2013) (refusing to allow joinder under FRCP 17 to cure "statutory standing" because party had ample time to do so); *Dolores Press, Inc. v. Jones*, 766 F. App'x 455, 459 (9th Cir. 2019) (remarking that joinder can cure "statutory standing" defects). Finally, there may be several reasons, particularly in the ERISA context, why a patient receiving health care may wish to utilize a power of attorney and, as Plaintiff argues, there appears to be no precedent clarifying the authority of courts to dictate who principals appoint as attorneys in fact, including factors that ought to be considered in doing so. *See Am. Orthopedic*, 890 F.3d at 455 ("[T]he Insurers' argument that anti-assignment clauses preclude principals from granting a power of attorney to their agents not only lacks support; it also seems

---

[14] The parties do not address the ethical, decision-making, or preclusive effect considerations, and the Court will not analyze them. However, the Court has done an exhaustive search and has found no precedent in this or any circuit that clarifies the consequences of a dismissal with prejudice because an agent lacked "statutory standing," but where the principal was the named plaintiff against whose name the dismissal was entered.

particularly ill-suited for the healthcare context where patients must rely on their agents when they anticipate even short-term incapacitation after medical procedures . . . ." (citation omitted)). Given these unresolved considerations, the identity of the named plaintiff is relevant in deciding whether to dismiss this action, and whether to dismiss it with prejudice.

Nevertheless, the undersigned recommends that the Court adopt the rule in other cases in this district precluding ERISA actions brought by physicians as attorneys in fact when the device of a power of attorney is, as here, utilized to plainly circumvent an unambiguous anti-assignment provision in a health plan. To hold otherwise would effectively nullify the Second Circuit's binding precedent that unambiguous anti-assignment provisions in health plans are valid and enforceable, because such provisions could easily be circumvented with a power of attorney. Moreover, it would allow a power of attorney to be utilized to authorize actions by persons whom Congress has declined to authorize as plaintiffs. The Court notes that, in the instant action, it is unclear the extent to which Dr. Farkas has, and intends to, participate in the action since, unlike some prior cases, the Amended Complaint is thoroughly drafted from Sundown's perspective. *Cf. Karkare D.P.*, 2023 WL 2711046, at *4 (reasoning, in rejecting plaintiff's argument, that "the Complaint is written in such a way that [the physician] is, in fact, suing in his own right and for his own benefit"). Nevertheless, to authorize the action would still allow for the nullification of unambiguous, enforceable anti-assignment clauses through mere clever drafting.

Because the power of attorney in the instant case is being utilized to circumvent the plan's unambiguous anti-assignment provision, the undersigned recommends that the Court hold that Dr. Farkas is not among the class of plaintiffs that Congress has authorized to bring this ERISA § 502(a)(1)(B) action, and thus Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).

**CONCLUSION**

For the reasons set forth above, this Court recommends that Defendant's motion to dismiss be GRANTED, and that the matter be dismissed WITHOUT PREJUDICE.

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

    /s/    Steven Tiscione    
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       January 16, 2024